PAMELA L. JOHNSTON, CA Bar No. 132558
  pjohnston@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE: 213.972.4500
FACSIMILE:  213.486.0065

Attorneys for Defendant
HERSEL NEMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-CR-00521-JAK |
| Plaintiff, | **DEFENDANT HERSEL NEMAN'S NOTICE OF MOTION TO SEVER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PAMELA L. JOHNSTON; EXHIBIT** |
| vs. | |
| PACIFIC EUROTEX CORP., MORAD NEMAN, HERSEL NEMAN, MEHRAN KHALILI, and ALMA VILLALOBOS, | **Hearing on Motion to Sever:**<br>Date:   January 15, 2015<br>Time:   8:30 a.m.<br>Place:  Courtroom 750<br>            Roybal Courthouse<br>            Hon. John A. Kronstadt |
| Defendants. | |
| | [FARSI INTERPRETER REQUESTED FOR HEARING] |
| | Trial Date: February 17, 2015 |

### *NOTICE OF MOTION AND MOTION TO SEVER*

PLEASE TAKE NOTICE that defendant Hersel Neman ("Neman") is requesting that this motion to sever be heard on January 15, 2015, at 8:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable John A. Kronstadt, which is Courtroom 750 in the Roybal Courthouse, 255 East Temple Street, Los Angeles, California.  Defendant Neman, by and through his counsel of record, moves this Court for severance of the trial of Hersel Neman from the trial of co-defendant Alma Villalobos.

This motion to sever is brought pursuant to Rule 14 of the Federal Rules of Criminal Procedure because a serious risk exists that a joint trial will violate H. Neman's right of confrontation under the Sixth Amendment of the Constitution.  Specifically, because the Government intends to introduce co-defendant Alma Villalobos's out-of-court statement to an undercover agent that inculpates H. Neman (and has rejected H. Neman's request not to use these statements), H. Neman will be denied his Sixth Amendment right to confront a witness if Alma Villalobos does not testify at trial, in violation of *Bruton v. United States*, 391 U.S. 123 (1968).

//

//

//

//

This motion is based on the attached Memorandum of Points and Authorities, the declaration of Pamela Johnston and attached exhibit filed separately in support of this motion, the pleadings in this case, and such oral argument as this Court may permit.

Respectfully submitted,

Dated: December 18, 2014

**FOLEY & LARDNER LLP**
Pamela L. Johnston

By: */s/ Pamela L. Johnston* ___
Pamela L. Johnston

Attorneys for Defendant
HERSEL NEMAN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Pursuant to Rule 14 of the Federal Rules of Criminal Procedure and the Sixth Amendment to the United States Constitution, Defendant Hersel Neman ("H. Neman") requests that this Court sever his trial from that of co-defendant Alma Villalobos ("A. Villalobos").  Severance is necessary in this case because a serious risk exists that a joint trial will violate H. Neman's right of confrontation under the Sixth Amendment. Specifically, because the Government intends to introduce A. Villalobos's August 9, 2013 statement to an undercover agent that inculpates H. Neman (and has rejected H. Neman's request not to use this statement), H. Neman will be denied his Sixth Amendment right to confront a witness if A. Villalobos does not testify at trial.

Based on the foregoing, severance of the trials of H. Neman and A. Villalobos is proper in this case and is necessary to guarantee that H. Neman receives a fair trial in this case.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Charges in the Indictment

On September 9, 2014, a federal grand jury issued an Indictment against H. Neman and co-defendants Pacific Eurotex Corp. ("PEC"), Morad Neman ("M. Neman"), Mehran Khalili ("M. Kahili"), and A. Villalobos.  The Indictment charges H. Neman with a variety of federal crimes, including: 1) Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); 2) Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii); 3) Conspiracy, in violation of 18 U.S.C. § 371; 4) Structuring Financial Transactions to Evade Reporting Requirements, in violation of 31 U.S.C. §§ 5313 and 5324(a), (d)(2); 5) Failure to File Report of Currency Transaction in a Non-financial Trade or Business, in violation of 31 U.S.C. §§ 5331 and 5324(b), (d)(2); and 6) Criminal Forfeiture, in violation of both 18 U.S.C. § 982(a)(1) and 31 U.S.C. § 5317. (Indictment, Docket No. 1).

### B. The Allegations in the Indictment

The Indictment alleges the following overt acts: M. Neman and H. Neman used defendant PEC to receive large amounts of narcotics proceeds in the form of bulk U.S. currency as payment for outstanding orders from customers in Mexico, Guatemala, and elsewhere. (Indictment, Count 1, Sec. A., ¶ 9; Sec. C., ¶ 1). According to the allegations in the Indictment, H. Neman and A. Villalobos received, counted, and recorded the following payments: 1) on May 30, 2013, H. Neman and A. Villalobos received $50,000 on behalf of customer "Abraham Dichy" as payment for merchandise, (Count 1, Sec. D, ¶ 1); 2) on June 7, 2013, H. Neman and A. Villalobos received $70,000 on behalf of customer "Mayer" as payment for merchandise, (Count 1, Sec. D, ¶ 4); 3) on August 1, 2013, H. Neman and A. Villalobos received $100,000 on behalf of "Mayer" as payment for merchandise, (Count 1, Sec. D, ¶ 7); and 4) on August 9, 2013, H. Neman and A. Villalobos received $149,935 on behalf of "Mayer" as payment for merchandise. (Count 1, Sect. D, ¶ 10).

The Indictment further alleges that M. Neman, H. Neman, and A. Villalobos failed to file, on behalf of PEC, reports of currency transactions over $10,000, IRS Forms 8300, for these payments. (Count 1, Sec. D, ¶¶ 2, 5, 8, 11; Counts 3 – 6). Finally, the Indictment alleges that H. Neman, M. Neman, and M. Khalili structured deposits of portions of the cash payments to avoid reporting requirements. (Count 1, Sec. C., ¶4; Counts 7 – 10).

### C. May 13, 2013 Interaction with Government Agents Regarding Reporting Requirements

On or about May 13, 2013, Immigration & Customs Enforcement ("ICE") agents conducted an "educational outreach" with commercial businesses in the Los Angeles Fashion District, according to an agent's summary of the interaction. (Declaration of Pamela L. Johnston in Support of Defendant Hersel Neman's Motion to Sever ("Johnston Decl.), ¶ 1). According to the Report of Investigation ("ROI") the educational outreach was part of ICE's investigation into "trade-based money laundering." (*Id.*). According to

the ICE ROI and an ICE Notification of Law form, the agents only met with H. Neman and A. Villalobos during their "educational outreach" at PEC. (*Id.*). The agents provided H. Neman and A. Villalobos with an IRS publication and a blank copy of IRS Form 8300. (*Id.*). According to the agent's notes regarding the meeting at PEC, written on the ICE Notification of Law form, as the agents were leaving PEC, they purportedly overheard H. Neman tell A. Villalobos "[a]ll customers will do this paper now," in reference to IRS Form 8300. (*Id.*).

> **D.     A. Villalobos August 9, 2013 Statement to Officer Inculpating H. Neman**

On or about May 30, June 7, August 1, and August 9, 2013, an undercover agent ("UC"), wearing a wire and a video recording device, allegedly delivered cash payments to PEC on behalf of customers Abraham Dichy and Mayer to pay for past purchases of merchandise. (Johnston Decl., ¶ 2). During these meetings, the UC repeatedly asked A. Villalobos for a receipt for the cash deliveries, despite statements by A. Villalobos that PEC did not provide receipts for such deliveries. (*Id.*).

On May 30, the UC allegedly requested a receipt for the cash payment she was delivering on behalf of PEC customer Abraham Dichy. (Johnston Decl., ¶ 2). In response, A. Villalobos advised the UC that "we [PEC] don't give anything here … we will call … and let them know we got this amount. (*Id.*). On August 1, the UC again allegedly requested a receipt for the cash payment she was delivering on behalf of PEC customer Mayer. (*Id.*). In response, A. Villalobos again advised the UC that PEC did not give receipts and that "Mayer knows that." (*Id.*).

On August 9, 2013, the UC allegedly delivered a cash payment on behalf of PEC customer Mayer and, after A. Villalobos counted the cash, the UC asked "[d]o you want to give me something saying that its short." (Johnston Decl., ¶¶ 3-4, Ex. A, PEC2_002659). A. Villalobos responded, "No." (Johnston Decl., ¶¶ 3-4, Ex. A, PEC2_002659). However, after the UC claimed that she did not want to get in trouble, A. Villalobos allegedly agreed to write a note regarding how much PEC received but stated ***"I'm not going to put anything because Mr. Hersel doesn't like."*** (Johnston

Decl., ¶¶ 3-4, Ex. A, PEC2_002659) (emphasis added).  In response, the UC allegedly asked A. Villalobos "Because what?"  A. Villalobos responded "I am not going to put anything, only the amount, OK." (Johnston Decl., ¶¶ 3-4, Ex. A, PEC2_002659).

The Government has rejected H. Neman's request not to introduce this part of A. Villalobos's August 9, 2013 statement at trial.  (Johnston Decl., ¶ 5).

## III. THE COURT SHOULD SEVER THE TRIALS OF H. NEMAN AND A. VILLALOBOS TO AVOID PREJUDICE TO H. NEMAN

### A. Legal Standard for Severance of Defendants

The district court has the power to order separate trials of counts to avoid prejudice.  Rule 14 of the Federal Rules of Criminal Procedure provides:

> If the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts [] . . . or provide any other relief that justice requires.

Fed.R.Crim.Pro. 14(a).  Thus, "[a]lthough joinder is generally favored because it promotes efficiency, Rule 14 provides that the trials may be severed when it is apparent that a joint trial would cause prejudice." *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999) (reversing district court's denial of severance motion).  Moreover, the district court has "wide discretion in ruling on a severance motion." *United States v. Vaccaro*, 816 F.2d 443, 449 (9th Cir. 1987) (overruled on other grounds); *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987).

Prejudice justifying severance of defendants may arise from the real risk that a joint trial would "compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Fernandez*, 388 F.3d 1199, 1241, (9th Cir. 2004); *Mayfield*, 189 F.3d at 899 (same); *Vaccaro*, 816 F.2d at 449 ("The prejudice of a joint trial must be such as to violate a defendant's fair trial rights").  Conditions in a joint trial creating such prejudice would include "***unavailability of full cross-examination***, lack of opportunity to present an individual defense, ***denial of the right of confrontation***, lack of separate counsel among

1 defendants with conflicting interests, or failure to instruct the jury properly on the
2 admissibility of evidence as to each defendant." *Vaccaro*, 816 F.2d at 449 (emphasis
3 added); *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

"'The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'" *Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999) (quoting *Maryland v. Craig*, 497 U.S. 836, 845 (1990)).  The Sixth Amendment guarantees the accused a right to confront and cross examine the witnesses against him. *Bruton v. United States*, 391 U.S. 123, 134 (1968).

### B. H. Neman Will Be Prejudiced If Ms. Villalobos Invokes Her Privilege Against Self-Incrimination and Does Not Testify

If Ms. Villalobos does in fact refuse to take the stand, which is likely, any government attempt to introduce Ms. Villalobos's prior statement to the UC would prejudice H. Neman and violate *Bruton* and its progeny.

In *Bruton*, the Supreme Court held that the Confrontation Clause is violated "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." 391 U.S. at 135-36.  When the prosecution introduces a statement by a co-defendant that inculpates a defendant and the co-defendant does not take the stand, the inculpated defendant loses his right of confrontation. *Id*. at 134.  The Ninth Circuit has held that "[u]nder *Bruton* and its progeny 'the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, or powerfully implicates the defendant.'" *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008) (citations omitted).

Here, A. Villalobos's alleged August 9, 2013 statement to the officer – "I'm not going to put anything because Mr. Hersel doesn't like[]" – clearly falls within the scope of *Bruton*.  Ms. Villalobos's inculpatory statement goes directly to the heart of the government's allegations against H. Neman, facially implicating him in the charges in the

Indictment. With respect to the money laundering charges, the government alleges that H. Neman and A. Villalobos were the only two receiving, counting, and recording the cash payments. A. Villalobos's statement, exculpating her and inculpating H. Neman, will lead the jury to an obvious implication: that H. Neman was the culpable party and knew the cash was from unlawful activities. A. Villalobos' statement not only specifically references H. Neman by name, her statements cause a "'powerful' inculpatory impact." *United States v. Angwin*, 271 F.3d 786, 796 (9th Cir. 2001). Indeed, when reviewing the charges in the Indictment and A. Villalobos' statement to the UC, it is impossible to de-link A. Villalobos' statement from its inculpatory effect on H. Neman.

As to the structuring charges, A. Villalobos' statement is even more potentially impactful. The government contends, in part, that A. Villalobos and H. Neman were aware of the federal reporting requirements after the ICE agents May 13, 2013 "educational outreach." The obvious implication of A. Villalobos's statement, however, is that H. Neman was the one making the decisions and that Ms. Villalobos was only following H. Neman's orders. The jury would be led to draw only one inference: if not Ms. Villalobos, then it must be H. Neman who intended to violate the reporting requirements, as they were the two present during ICE's May 13, 2013 "educational outreach."

If Ms. Villalobos asserts her privilege against self-incrimination and decides not to testify on her own behalf, H. Neman will be unable to cross-examine Ms. Villalobos regarding her statement to the UC. H. Neman would be left to suffer the substantial risk that the jury will look to Ms. Villalobos's incriminating extrajudicial statements in determining his guilt. Such a scenario violates the principles set forth by the Supreme Court in *Bruton*.

### C. Redaction and Limiting Instructions Are Insufficient

In the instant matter, it is beyond argument that A. Villalobos' statement to the UC is "powerfully inculpatory" and does not merely "inferentially" implicate H. Neman;

therefore, redaction and a limiting jury instruction do not suffice to protect H. Neman's Sixth Amendment right to confront the witness. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). In *Bruton*, the Court rejected the argument that a limiting instruction could cure the violation because:

> [P]owerfully incriminating statements of a codefendant who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

391 U.S. at 135-36.

Redaction and a limiting instruction are only acceptable when the statements merely inferentially implicate the defendant when linked with other evidence introduced later at trial and the statement has been redacted to eliminate any reference to the defendant's existence. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Here, the statement does not merely inferentially implicate H. Neman. A. Villalobos' statement specifically identifies H. Neman as the source of a purported lack of a paper trail within PEC, facially inculpating H. Neman as the actor for each of the Government's allegations. *Angwin*, 271 F.3d at 796.

Moreover, merely removing H. Neman's name would be insufficient.[1] The Supreme Court has further held that even when a redacted co-defendant's statement does not reference the defendant explicitly, *Bruton* bars its introduction at a joint trial if the statement is redacted in such a way as to make the naming of the defendant obvious to the jury. *Gray v. Maryland*, 523 U.S. 185, 189 (1998) (holding that under *Bruton*, the

---

[1] If the name is removed, it may also implicate co-defendant Morad Hersel.

DEFENDANT HERSEL NEMAN'S MOTION TO SEVER
-7-
Case No. 14-CR-00521-JAK
4812-8515-5104.4

Sixth Amendment bars the admission of co-defendant's incriminating statement that has been redacted to replace the defendant's name with a blank space, a symbol, or other obvious indication of alteration). *See also United States v. Peterson*, 140 F.3d 819, 822 (9th Cir. 1998) (rejecting the use of a neutral pronoun or symbol in place of defendant's name because "the codefendant was pointing an accusatory finger at someone and it was not difficult for the jury to determine that the person was the other defendant on trial"); *United States v. Parks*, 285 F.3d 1133, 1139 (9th Cir. 2002) (finding use of the word "they" in a statement in which the co-defendant implicated the defendant, whose name was redacted, and a third party, whose name was not redacted, violated *Bruton*, because it implicated someone other than the named co-conspirator in the offense, and it would be only natural for the jury to conclude that the unnamed person was the defendant).

In *Gray*, a confession by a co-defendant was redacted by merely omitting the names of Gray and a deceased accomplice. When a detective read the confession at trial, he said, "'deleted'" or "'deletion'" in lieu of these names. After he finished reading the confession, he testified that based upon the information provided by Bell, he arrested Gray. The written copy of the confession substituted blank spaces, separated by commas, for their names. 523 U.S. at 188-189. The Supreme Court held that the redacted confession ran afoul of *Bruton* because it "refer[red] directly to the 'existence' of the nonconfessing defendant," and the jury would have realized that it was the nonconfessing defendant's name that had been deleted. *Id*. at 192-193. The court noted that "the prosecutor, after all, has been arguing that [the nonconfessing defendant], not someone else, helped [the confessing defendant] commit the crime." *Id.* at 193. The Court further noted that "the obvious deletion may well call the jurors' attention specially to the removed name. By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation — once the jurors work out the reference." *Id.* Statements redacted in this manner are as directly accusatory as unredacted statements and create "a special, and vital, need for cross-examination." *Id.* at 194. "The blank space in an obviously redacted confession also

points directly to the defendant, and it accuses the defendant in a manner similar to Evans' use of *Bruton's* name or to a testifying codefendant's accusatory finger. By way of contrast, the factual statement at issue in *Richardson* — a statement about what others said in the front seat of a car — differs from directly accusatory evidence in this respect, for it does not point directly to a defendant at all." *Id.*

The Court in *Gray* conceded that "in some instances the person to whom the blank refers may not be clear," such as when the evidence "indicates that there are more participants than the confession has named." *Id*. at 194-195. The Court also acknowledged that a jury had to use inference to connect the blanks in the redacted statement to the defendant, and that "*Richardson* placed outside the scope of *Bruton's* rule those statements that incriminate inferentially." *Id*. at 195. But the Court concluded that *Richardson's* application depended "in significant part upon the kind of, not the simple fact of, inference." *Id*. 196. When, notwithstanding redaction, the statement "obviously refer[s] directly to someone, often obviously the defendant, and . . . involve[s] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial," the introduction of the statement at a joint trial violates the non-confessing defendant's confrontation rights. *Id*. at 196-97.

Here, it is impossible to redact A. Villalobos's statement sufficiently to prevent the jury from concluding that the unnamed person was H. Neman. Only H. Neman and A. Villalobos are alleged to have received, counted, and recorded the cash. Only H. Neman and A. Villalobos were present during ICE's May 13, 2013 "educational outreach." If the government attempts to redact H. Neman's name from A. Villalobos's statement, the jury will still be able to clearly infer that A. Villalobos is referring to H. Neman when she pointed the finger at someone else. Given the allegations in the Indictment that only H. Neman and A. Villalobos received, counted, and recorded the cash payments, the logical person who A. Villalobos could be inculpating with her statement is H. Neman. If it is not possible to redact a non-testifying co-defendant's statement to eliminate any reference to another co-defendant's existence, then the *Bruton* rule applies, and the

statement is inadmissible under the Confrontation Clause. *Gray*, 523 U.S. at 188.

Here, redaction is not sufficient because (1) the statements do not merely inferentially implicate H. Neman, but directly inculpate him in each charge; *See Richardson*, 481 U.S. at 211; (2) there is no way to redact the statement to eliminate all reference to H. Neman's existence; *Gray*, 523 U.S. at 189; and (3) it would be only natural for the jury to conclude that the unnamed person was H. Neman. *Parks*, 285 F.3d at 1139.

Based on the foregoing, redaction of H. Neman's name from A. Villalobos's August 9, 2013 statement to the UC and providing limiting instructions would not suffice to protect H. Neman's Sixth Amendment right to confront A. Villalobos about the statement.

## IV. CONCLUSION

Based on the foregoing reasons, this Court should sever the trials of H. Neman and Ms. Villalobos as it is apparent that a joint trial would cause prejudice to H. Neman and deprive him of his constitutional right to confront Ms. Villalobos.

Respectfully submitted,

DATED: December 18, 2014         **FOLEY & LARDNER LLP**
                                 Pamela L. Johnston


                                 By: */s/ Pamela L. Johnston*
                                     Pamela L. Johnston

                                     Attorneys for Defendant
                                     HERSEL NEMAN